Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6895 | **DATE** | 8/2/2000 |
| **CASE TITLE** | SECURITIES & EXCHANGE COMMISSION vs. CHARLES RICHARD HOMA, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order: The Court denies defendants Nichols, Dickerson, Safeharbor, Volunteer, Bellwether, Southwestern, and Title's motion to dismiss [124-1] pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | AUG 0 4 2000 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | ED-7 FILED FOR DOCKETING | docketing deputy initials |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | 00 AUG -3 AM 10: 47 | |
| CG | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

Document Number: 301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SECURITIES AND EXCHANGE COMMISSION,      )
                                         )
                                         )
              Plaintiff,                 )
                                         )
      v.                                 )    No. 99 C 6895
                                         )    Judge Ronald A. Guzman
CHARLES RICHARD HOMA; SUNSET FINANCIAL   )
SERVICES, LLC, C4T MANAGEMENT, INC., T/P )
FUNDING SERVICES, INC., MICHAEL GAUSE,   )
BILL J. SHORT, II, JIMMY B. ROOF, ROBERT C. )
ELLENBURG, STEVEN SHANE NICHOLS,         )
CHARLES EDWARD DICKERSON, PHILIP A.      )
SHARPTON, BILCIN ENTERPRISES, INC., JIMMY )
B. ROOF, LLC, R. ELLENBURG, LLC, R & E   )
ASSOCIATES LTD. D/B/A/ ROOF & ELLENBURG, )
LLC, SAFEHARBOR ADVISORS, INC., PAS, INC., )
PAS HOLDINGS, INC., VOLUNTEER            )
ENTERPRISES, LTD., GULFCOAST HOLDINGS,   )
LLC, R & E LTD. D/B/A/ JB ROOF & ASSOCIATES, )
LLC, J & R FINANCIAL SERVICES, LTD., J. ROOF )
& R ELLENBURG, LLC, BELLWETHER           )
HOLDINGS, LLC, SOUTHWESTERN HOLDINGS,    )
LLC, TITLE HOLDINGS, LLC, D. DEAN PEARSON, )
JOHN TELFORD SNIPES, JOHN MARTIN         )
CAELSON, JOSEPH FREDERICK DENSON, JR.,   )
CARLSON NATIONAL BROKERS, LTD., GLOBAL   )
MANAGEMENT ENTERPRISES, LLC, PREFERRED   )
RETURNS, INC., JTP, INC., TRADEWINDS     )
HOLDINGS, LLC, PEAK HOLDINGS, LLC,       )
HARBOR HOLDINGS, LLC, PEARSON            )
ENTERPRISES TRUST, PARAMOUNT HOLDINGS,   )
LLC, PREMIERE HOLDINGS, LTD., ROLLS      )
ROYCE, LTD., and MORNINGSTAR, LTD.       )
                                         )
              Defendants,                )
and                                      )
                                         )
LINDY L. GAUSE, LINDA L. NICHOLS AND     )
NICHOLS AND ASSOCIATES,                  )
                                         )
              Relief Defendants.         )

DOCKETED
AUG 04 2000

301

## MEMORANDUM OPINION AND ORDER

The Securities and Exchange Commission ("SEC") has brought this action against defendants for their involvement in an alleged Ponzi scheme.[1] Steven Nichols ("Nichols"), Charles Dickerson ("Dickerson"), Safeharbor Advisors, Inc. ("Safeharbor"), Volunteer Enterprises, Ltd. ("Volunteer"), Southwestern Holdings, LLC ("Southwestern"), Title Holdings, LLC ("Title"), and Bellwether Holdings, LLC ("Bellwether") have moved to dismiss the Complaint[2] pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6). For the reasons provided in this Memorandum Opinion and Order, the motion is denied.

## FACTS

Between 1996 and October 1999, defendants have engaged in a $314 million Ponzi scheme in which they have raised at least $205 million from over 1000 investors through sixteen offerings of notes and bonds. (Am. Compl. ¶ 1.) Defendants are part of a multi-level marketing scheme, in which defendants Michael Gause ("Gause") and Richard Homa ("Homa") are at the top and below them are marketers of the notes and bonds, who obtain investor proceeds for use by the entities affiliated with Homa and Gause. (*Id.*)

The present motion has been brought by certain defendants in two different categories.

---

[1] "The classic Ponzi scheme involves individuals . . . who convince investors to purchase interests in phony or unprofitable . . . partnerships, paying off old investors with the money from new investors." *United States v. Brown*, 47 F.3d 198, 201 n.1 (7th Cir. 1995) (citations omitted).

[2] SEC subsequently filed an Amended Complaint, which did not change the substance of the allegations against the defendants and merely added allegations regarding new defendants. Thus the Court throughout this Memorandum Opinion and Order will refer to the Amended Complaint.

2

The first category, the "Issuer Defendants," includes entities through which offerings have been conducted, for example, Bellwether, Southwestern, Title, and five other business entities. (*Id.* ¶ 2.) The second category, the "Marketer Defendants," includes Nichols,[3] who directed the multi-level marketing structure, others including Dickerson,[4] who was part of that marketing structure, and the corporate defendants they control, which includes, Safeharbor and Volunteer. (*Id.* ¶ 4.)

In the offering and sale of Bellwether notes and Southwestern and Title bonds, the Issuer and Marketer Defendants have indicated to investors that Bellwether, Southwestern, and Title loan the proceeds from the sale of the notes and bonds to a company that provides capital to companies engaged in making car title loans and check cashing and advance loans. (*Id.* ¶ 6.) We address the offerings of Bellwether, Southwestern, and Title in turn.

From April 1998 to June 1999, Bellwether raised at least $11 million through the sale of notes to at least 136 investors in 17 states. (*Id.* ¶ 59.) Bellwether's offering document represented to investors that the funds raised through the sale of the notes would be invested in the car title lending industry. (*Id.* ¶ 60.) Although the offering document did not identify the company to which investor funds would be loaned, at least some of the Bellwether owners knew that the money would go to C4T. (*Id.*) In certain instances, Bellwether owners arranged for potential investors to meet with Homa to learn about the car title loan industry and how the funds raised in the Bellwether offering were supposed to be invested. (*Id.*)

---

[3]Nichols is the Managing Director of Bellwether, Southwestern, and Title, and he is the sole owner, officer, and director of Safeharbor, which owns 20% of Bellwether, 9.09% of Southwestern, and 10% of Title. (*Id.* ¶ 26.)

[4]Dickerson is owner of Volunteer, which owns 20% of Bellwether and 9.09% of Southwestern. (*Id.* ¶ 28.)

In December 1998, Southwestern began a $10 million offering which, through June 1999, had raised at least $8 million. (*Id.* ¶ 63.) Southwestern has sold bonds to at least eighty-six investors in at least thirteen states. (*Id.*) Southwestern's offering documents state that investor funds will be used to loan money to a company that will, in turn, lend the money to companies in the car title and check cashing and advance business. (*Id.* ¶ 64.) Those documents also indicate that investor returns will be generated by car title loans and check cashing and advance loans. (*Id.*)

In approximately May or June 1999, Title began a $10 million bond offering. (*Id.* ¶ 67.) Title's offering documents state that investor funds will be used to loan money to a company that will lend the money to companies in the car title and check cashing and advancement business. (*Id.* ¶ 68.) Those documents also show that investor returns will be generated by car title loans and check cashing and advance loans. (*Id.*)

Both the Southwestern and Title offering documents state that these entities obtained a security interest in the accounts receivable of the company to which investor funds would be loaned, and exhibits to the offering documents identify Sunset Financial as the recipient of the funds. (*Id.* ¶¶ 64, 68.) However, Sunset Financial has only $1 million in accounts receivable and thus the accounts receivable pledged by Sunset Financial were inadequate security for the approximately $19.8 million loaned to it by Southwestern, Title, and another Issuer Defendant, Gulfcoast. (*Id.* at ¶ 102.)

To facilitate these offerings, Gause and Homa met with Marketer Defendants and investors to explain the car title lending business. (*Id.* ¶ 8.) The only company identified by Gause and Homa to the Marketer Defendants and Issuer Defendants as receiving investor funds

4

is defendant C4T Management, Inc. ("C4T"), a company owned and operated by Homa, which makes car title loans through its operating affiliates. (*Id.*) No check cashing and advance loan company has been identified as receiving investor funds. (*Id.*)

Despite the fact that Bellwether, Southwestern, and Title's offerings raised considerable investor funds, C4T received only around $1 million from Sunset Financial from May 1998 through June 1999. (*Id.* ¶ 91.) Further, C4T's bank records establish that its operating affiliates did not generate significant revenues between May 1998 and June 1999, and therefore they could not have generated the money used to pay interest on investor notes and bonds. (*Id.* ¶ 97.) Instead, the majority of the investor funds were transferred to accounts in the Cayman Islands and used to pay interest on the notes and bonds of only the earlier investors, to pay the personal expenses of Homa and Gause, and to compensate the Marketer Defendants and other defendants. (*Id.* ¶ 11.)

## DISCUSSION

### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 9(b)

Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 9(b). Rule 9(b) provides that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity." "Rule 9(b) effectively carves out an exception to the otherwise generally liberal pleading requirements under the Federal Rules." *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir. 1991). The purpose of the rule is: "(1) to reasonably notify defendants of their roles in the alleged scheme so that they may prepare a responsive pleading; and (2) to 'safeguard potential defendants from

lightly made claims charging commission of acts that involve some degree of moral turpitude.'"
*In re VMS Securities Litigation*, 752 F. Supp. 1373, 1390 (N.D. Ill. 1990) (quoting *Bankers Trust Co. v. Old Republic Ins. Co.*, 697 F. Supp. 1483, 1484-85 (N.D. Ill. 1988)). Thus, "parties pleading fraud in federal court . . . must 'state the time, place and content' of the alleged communications perpetrating the fraud." *Graue Mill*, 927 F.2d at 992. Such "pleadings must state the 'specific content of the false representations as well as the identities of the parties to the misrepresentation.'" *Id.* (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)). In essence, the Seventh Circuit has stated that in order to plead fraud with particularity, a plaintiff must plead the "who, what, when, where and how" of the alleged fraud. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

Defendants argue that the SEC has not pleaded the who, what, when, where, and how of the alleged fraud. The Court disagrees.

With regard to who was a party to the fraud, the Amended Complaint clearly specifies which defendants committed fraud on investors as part of the Ponzi scheme. (Am. Compl. ¶¶ 4, 26 (Nichols & Safeharbor); *id.* ¶¶ 4, 28 (Dickerson & Volunteer); *id.* ¶¶ 2, 36-38, (Bellwether, Southwestern & Title)). Further, the SEC details the roles these defendants played in the fraud: Nichols, Dickerson, Safeharbor and Volunteer marketed the fraudulent securities to unknowing investors and Bellwether, Southwestern, and Title issued the fraudulent securities. (*Id.* ¶¶ 2, 4, 59-62, 63-66, 67-69.)

Further, the SEC has alleged sufficiently the substance of defendants' misrepresentations as well as how the fraud occurred. The SEC has stated that Nichols, Safeharbor, Dickerson, and Volunteer as marketers, and Bellwether, Southwestern, and Title as issuers, have made

6

misrepresentations and omissions of fact to investors in connection with the purchase and sale of Bellwether notes and Southwestern and Title bonds. Bellwether's offering document indicated to investors that funds raised through the sale of the notes would be invested in the car title lending industry. (*Id.* ¶ 60.) Southwestern and Title's offering documents stated that: (1) investor funds would be used to loan money to a company that would, in turn, lend the money to companies in the car title and check cashing and advance loan business; and (2) investor returns would be generated by car title loans and check cashing and advance loans. (*Id.* ¶¶ 64, 68.) However, the only company identified by Gause and Homa to the Issuer Defendants and Marketer Defendants as receiving investor funds is defendant C4T, which makes car title loans through its operating affiliates. (*Id.*) No check cashing and advance loan company has been identified as receiving investor funds. (*Id.*) Despite the fact that Nichols, Dickerson, through Safeharbor and Volunteer, raised over $19 million from investors as a result of the Bellwether, Southwestern, and Title offerings, only $1 million has been channeled to C4T. (*Id.* ¶¶ 59, 63, 94.) Further, since December 1998, Southwestern paid investors at least $957,000 in interest, and since April 1998, Bellwether paid investors at least $5.5 million in interest, and C4T's bank records establish that neither C4T nor its operating affiliates was the source of funds used to pay interest on investor notes and bonds. (*Id.* ¶¶ 62, 66, 97.) SEC alleges that as marketers and issuers of the notes and bonds, Nichols, Dickerson, Safeharbor, Volunteer, Bellwether, Southwestern, and Title either: (1) obtained reliable financial information and loan schedules reflecting the use of investor funds by C4T and its operating affiliates from Sunset Financial, T/P Funding or C4T and knew that the information they have given and continue to give to investors is false; or (2) had an insufficient basis to tell investors that the proceeds of the notes and bonds

7

would be used to fund car title loans and check cashing and advance loans and that the loans would generate the promised interest payments on the notes and bonds. (*Id.* ¶ 105.)

In addition, Southwestern and Title's offering documents indicate that Southwestern and Title had obtained a security interest in the accounts receivable of the company to which investor funds will be loaned and exhibits to the offering documents identify Sunset Financial as the recipient of the funds. (*Id.* ¶¶ 64, 68.) Sunset Financial had only $1 million in accounts receivable based on its loan of money to C4T and did not have the assets to pay $20 million in promissory notes given to Southwestern and Title Holdings. (*Id.* ¶ 102.) SEC has alleged that Nichols, Dickerson, Safeharbor, Volunteer, Southwestern, and Title either knew that the promissory notes given and accounts receivable pledged by Sunset Financial did not adequately secure the offerings or had an insufficient basis to create the impression to investors that the promissory notes and receivables were adequate security. (*Id.* ¶ 105.)

Next, the SEC has alleged when and where the fraud occurred. With regard to the defendants that have moved to dismiss the Amended Complaint, the SEC outlines that the fraud began in April 1998 and continued through May or June 1999. The Bellwether offering occurred between April 1998 to June 1999 during which time Bellwether raised at least $11 million through the sale of notes to at least 136 investors in 17 states by promising interest of 27% per year. (*Id.* ¶ 59.) The Southwestern offering began in December 1998 continued through June 1999 during which time Southwestern raised at least $8 million by selling bonds to at least 86 investors in at least 13 states promising interest of 15% to 27% annually. (*Id.* ¶ 63.) The Title offering began in May or June 1999 during which time Title raised $300,000 through the sale of bonds promising interest of 15% to 27% per year. (*Id.* ¶ 67.) Thus, the SEC sufficiently alleges

8

that the fraud occurred upon each sale in connection with the Bellwether, Southwestern, or Title offerings and in those states where sales occurred.

In sum, the Court finds the SEC has pleaded the who, what, when, where, and how of the fraud in sufficient detail. The Court thus rejects defendants' arguments that the SEC has "done nothing more than make blanket allegations of fraud" and has "lumped" all of the defendants together. (Defs.' Mem. Supp. Mot. Dismiss, at 7.) As discussed above, the Amended Complaint does nothing of the sort. The Amended Complaint gives reasonable notice to the defendants of their specific roles in the alleged fraud, and these detailed allegations assure the Court that the SEC has not made claims lightly that defendants have committed acts that involve a certain degree of moral turpitude. Therefore, the Court denies defendants' motion to dismiss because the Amended Complaint is fully compliant with Rule 9(b).

## B. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Defendants also have moved to dismiss Counts I, III, and IV of the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) because the SEC has failed to plead adequately scienter. On a motion pursuant to Rule 12(b)(6), the Court must accept "the factual allegations contained in the complaint as true and construe them in the light most favorable to the plaintiff." *Fries v. Helsper*, 146 F.3d 452, 456 (7th Cir. 1998). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

The scienter requirement for violations of Section 10(b) (Count III) and Section 15(c)(1) (Count V) of the Exchange Act and Section 17(a)(1) (Count I) of the Securities Act is satisfied

9

by reckless conduct. *See SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998), *cert. denied*, 525 U.S. 1103 (1999) (Section 10(b)(5)); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 528 (7th Cir. 1985) (Section 17(a)(1)); *Darvin v. Bache Halsey Stuart Shields, Inc.*, 479 F. Supp. 460, 464 (S.D.N.Y. 1979) (Section 15(c)(1)). Reckless conduct includes "an extreme departure from the standards of ordinary care . . . [that] present[s] a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *SEC v. Randy*, 38 F. Supp. 2d 657, 670 (N.D. Ill. 1999). Although Rule 9(b) requires fraud to be pleaded with particularity, the rule "does not require 'particularity' with respect to the defendants' mental state." *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990). Instead, the allegations in the complaint need only "afford a basis for believing that plaintiff[] could prove scienter." *Id.*

In this case, the SEC has alleged that Nichols, Dickerson, Safeharbor, Volunteer, Bellwether, Southwestern, and Title, as issuers and marketers of the fraudulent securities that promised high returns, received reliable financial information and loan schedules reflecting the use of investor funds by C4T and its operating affiliates from Sunset Financial, T/P Funding or C4T and knew that the information they had given to investors was false. (Am. Compl. ¶ 105.) The SEC further alleges that even if this were not the case, these defendants had an insufficient basis to tell investors that the proceeds of the notes and bonds would be used to fund car title loans and check cashing and advance loans and that such loans would generate the promised interest payments on the notes and bonds. (*Id.*) In addition, based on reliable financial information, Nichols, Dickerson, Safeharbor, Volunteer, Southwestern, and Title, who offered and sold the Southwestern, Title and other bonds, which were secured by a promissory note

10

pledged by Sunset Financial, either knew that those bonds were inadequately secured or had an insufficient basis for indicating that the bonds were adequately secured. (*Id.*) Moreover, the SEC alleges that Nichols, who is Managing Director of Bellwether, Southwestern, and Title and owner of Safeharbor, and Dickerson, who is the owner of Volunteer, knew that investor proceeds were deposited in offshore account in the Cayman Islands and that Nichols had authority to transfer funds into and out of that account. (*Id.* ¶¶ 10, 61.) Accordingly, the SEC alleges that the Marketer and Issuer Defendants were privy to information that should have made them aware that the securities were fraudulent and yet they continued to issue and sell them.

The SEC further alleges that the Marketer and Issuer Defendants had everything to gain by acting recklessly. Since April 1998, Bellwether's owners received at least $2.4 million in compensation, and Bellwether paid Safeharbor $650,762 and Volunteer $372,540 in marketing compensation. (*Id.* ¶ 62.) Since December 1998, Southwestern's owners received at least $492,500 in compensation, and Southwestern has paid Safeharbor $112,697 and Volunteer $51,101 in marketing compensation. (*Id.* ¶ 66.) Nichols has been compensated as Managing Director of Bellwether, Southwestern, and Title, and owns Safeharbor, which owns 20% of Bellwether, 9.09% of Southwestern, and 10% of Title. (*Id.* ¶ 26.) Dickerson receives a .5% monthly commission on all funds raised in the Bellwether and Southwestern offerings and owns Volunteer, which owns 20% of Bellwether and 9.09% of Southwestern. (*Id.* ¶ 28.)

Based on the above facts and the reasonable inferences drawn therefrom, the Court finds that the allegations in the Amended Complaint create a basis for believing that the SEC could prove scienter. Contrary to the defendants' argument otherwise, the SEC has alleged specific facts regarding scienter that establish that defendants were not merely duped by Homa and

11

Gause, as were the investors in this case. Instead, the SEC has alleged sufficiently that the defendants engaged in, at the very least, reckless conduct, when they made misrepresentations in connection with the sale of the Bellwether, Southwestern, and Title securities.

## CONCLUSION

For the foregoing reasons, the Court denies the Nichols, Dickerson, Safeharbor, Volunteer, Bellwether, Southwestern, and Title's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).

SO ORDERED 8/2/00          ENTERED:

*Ronald A. Guzman*
HON. RONALD A. GUZMAN
United States Judge