'er Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 6895 | **DATE** | 3/31/2004 |
| **CASE TITLE** | SECURITIES & EXCHANGE COMMISSION vs. CHARLES RICHARD HOMA, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10)■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: This Court (1) denies Banc Caribe Ltd.'s motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction [1234-1]; (2) denies Pollock and Jones' motion to vacate the freeze order [1263-1]; and (3) grants the Receiver's motion for rule to show cause why Pollock and Jones: (1) should not be ordered to pay the Receiver $1,975,000 for violating the Freeze Order and transferring those funds out of the PaineWebber account to a Banc Caribe account in Athens, Greece; and (2) should not be required to pay the Receiver $2.5 million representing one half the sale proceeds from the sale of Banc Caribe [1193-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 31 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 1344 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 2004 MAR 31 PM 3:58 | date mailed notice | |
| CG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | 99 C 6895 |
| | ) | |
| CHARLES RICHARD HOMA; SUNSET FINANCIAL SERVICES, LLC, C4T MANAGEMENT, INC., T/P FUNDING SERVICES, INC., MICHAEL GAUSE, BILL J. SHORT, II, JIMMY B. ROOF, ROBERT C. ELLENBURG, STEVEN SHANE NICHOLS, CHARLES EDWARD DICKERSON, PHILIP A. SHARPTON, BILCIN ENTERPRISES, INC., JIMMY B. ROOF, LLC, R. ELLENBURG, LLC, R & E ASSOCIATES LTD. D/B/A/ ROOF & ELLENBURG, LLC, SAFEHARBOR ADVISORS, INC., PAS, INC., PAS HOLDINGS, INC., VOLUNTEER ENTERPRISES, LTD., GULFCOAST HOLDINGS, LLC, R & E LTD. D/B/A/ JB ROOF & ASSOCIATES, LLC, J & R FINANCIAL SERVICES, LTD., J. ROOF & R ELLENBURG, LLC, BELLWETHER HOLDINGS, LLC, SOUTHWESTERN HOLDINGS, LLC, TITLE HOLDINGS, LLC, D. DEAN PEARSON, JOHN TELFORD SNIPES, JOHN MARTIN CAELSON, JOSEPH FREDERICK DENSON, JR., CARLSON NATIONAL BROKERS, LTD., GLOBAL MANAGEMENT ENTERPRISES, LLC, PREFERRED RETURNS, INC., JTP, INC., TRADEWINDS HOLDINGS, LLC, PEAK HOLDINGS, LLC, HARBOR HOLDINGS, LLC, PEARSON ENTERPRISES TRUST, PARAMOUNT HOLDINGS, LLC, PREMIERE HOLDINGS, LTD., ROLLS ROYCE, LTD., and MORNINGSTAR, LTD. | ) | Judge Ronald A. Guzmán |
| Defendants, | ) | DOCKETED |
| and | ) | MAR 3 1 2004 |
| LINDY L. GAUSE, LINDA L. NICHOLS AND NICHOLS AND ASSOCIATES, | ) | |
| Relief Defendants. | ) | |

1344

## MEMORANDUM OPINION AND ORDER

The Securities and Exchange Commission ("SEC") brought this action against Charles Richard Homa and other defendants as a result of their involvement in one of the largest Ponzi schemes in U.S. history. In furtherance of the scheme, Homa needed the cooperation of off-shore banks and individuals. Paul M. Jones ("Jones") and David A. Pollock ("Pollock") approached Homa to provide start-up capital for Banc Caribe, which he did, and subsequently tens of millions of dollars produced by the scheme were deposited in Banc Caribe. To ensure that the ill-gotten gains of defendants were not dissipated before bilked investors could present their claims, the Court entered an "Order Preserving Funds and Other Assets and Identifying Assets" ("Freeze Order"). After the Freeze Order was received by Banc Caribe and Homa, Jones, Banc Caribe's President and CEO, and Pollock, Banc Caribe's Managing Director and CFO, transferred funds to another bank in Greece and sold all Banc Caribe stock. Before the Court are the following motions: (1) Banc Caribe's Liquidator's motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction; (2) Pollock and Jones' motion to vacate the freeze order; and (3) Receiver Phillip S. Stenger's motion for rule to show cause why Pollock and Jones should not be held in contempt of court for violating the Freeze Order. For the reasons provided in this Memorandum Opinion and Order, the Court denies the motions of Banc Caribe's Liquidator, Pollock and Jones and grants the motion of the Receiver.

## FACTS

The following facts are not disputed and supported by the record.[1] From at least 1995 through October 1999, when he was arrested by the FBI and sued civilly by the SEC, Homa and Michael E. Gause created and operated a Ponzi scheme, which involved a variety of businesses purportedly associated with an automobile title lending business titled "Cash 4 Titles" or "C4T." (Mot. Show Cause ¶ 1.) The scheme swindled innocent investors of more than $165,000,000. (*Id.*)

In April 1998, Pollock and Jones, who are two U.S. citizens residing in Florida, offered Homa the chance to invest in a bank they were attempting to finance in the Commonwealth of Dominica. (*Id.* ¶ 7.) On June 5, 1998, Homa, via his company Sunset Financial Services, LLC, wire transferred $500,000 to the account of Caribbean Ventures International, Ltd., at the Commercial Bank of Dominica, which, on information and belief, was used to capitalize Banc Caribe. (*Id.* ¶ 8.) Seven days after Homa sent the money, Pollock and Jones filed the articles of incorporation for Banc Caribe. (*Id.* ¶ 9.) Upon information and belief, Banc Caribe was funded with the minimum capital allowed under the law of Dominica, $1 million, and accordingly, Homa owned at least 50% of the bank. (*Id.*)

In September 1988, Banc Caribe began doing business. (*Id.* ¶ 10.) Homa was Banc Caribe's Chairman of the Board of Directors, Jones was President, and Pollock was Managing Director. (*Id.*)

Until October 1999, when the SEC action was filed, at least $67,321,000 of Cash 4 Titles investor funds were deposited into accounts at Banc Caribe. (*Id.* ¶ 11.) At the same time, $58,549,580.12 was withdrawn from Banc Caribe by Cash 4 Titles entities. (*Id.*) Thus, prior to the

---

[1]The facts are provided in the Receiver's Motion to Show Cause Against Banc Caribe, Ltd., Paul M. Jones and David A. Pollock. On July 9, 2003, the Court entered an Order adjudging Banc Caribe in Civil Contempt, Awarding Damages & Imposing Injunctive Relief.

filing of the SEC action, Banc Caribe owed Cash 4 Titles entities $8,771,419.88. (*Id.*)

Around August 1999, Robert Ellenberg and Jimmy Roof, who are two Cash 4 Titles marketers and defendants in the SEC action, raised $5,355,000 from investors. (*Id.* ¶ 12.) On August 18, 1999, those funds were deposited into Banc Caribe's account at Dain Rauscher Inc. for the benefit of T/P Funding Services, Inc., a Cash 4 Titles entity. (*Id.*) The next day, Dain Rauscher transferred $2,000,000 to the account of Banc Caribe at PaineWebber, Inc. (*Id.*) Homa and Cash 4 Titles are liable for all of the debt associated with this revenue. (*Id.*)

On October 15, 1999, the SEC brought a civil action against defendants in the U.S. District Court for the Southern District of New York. Judge David N. Edelstein entered the "Order Preserving Funds and Other Assets and Identifying Assets," which froze assets of the Defendants. (*Id.* ¶ 13.) It stated, in pertinent part:

> Defendants . . . preserve all funds and other assets and Defendants, their officers, agents, servants, employees, attorneys and those persons in active concert or participation with defendants, including but not limited to GMD Aviation, Inc. and Banc Caribe, Ltd., who receive actual notice of the Order, by personal service or otherwise, are prohibited, directly or indirectly, in transferring, selling, assigning, encumbering, pledging, dissipating, concealing or otherwise disposing of in any manner, any funds, assets, or other property belonging to, or in the possession custody or control of the Defendants, wherever located.

(*Id.*) The SEC served a copy of the Freeze Order on Banc Caribe through Homa, its Chairman of the Board of Directors. (*Id.*)

On October 19, 1999, the Court issued an "Order to Financial Institutions Freezing Accounts of Defendants." The Order stated "[a]ny account in the name of any Defendant, or in which any Defendant has signatory authority or a beneficial interest, including but not limited to Cash 4 Titles, GMD Aviation, Inc. and Banc Caribe, Ltd., is frozen until further order of the Court." (Mot. Rule

4

Show Cause, Ex. K, Order of 10/18/99.)

On October 18, 1999, Jones, with knowledge and authorization of Pollock, directed that PaineWebber wire transfer $1,975,000 out of the Banc Caribe PaineWebber account to an account established by Pollock and/or Jones in the name of Banc Caribe at Alpha Credit Bank in Athens, Greece. (Mot. Rule Show Cause ¶ 17.) On October 20, 1999, $1,975,000 was transferred as directed. (*Id.*)

On October 26, 1999, the SEC and Banc Caribe entered into a Stipulation and Order whereby Banc Caribe agreed, in pertinent part, to: (1) transfer the current balance at Banc Caribe's Dain Rauscher account and its current balance at its South Trust Bank into an escrow account entitled the SEC Escrow Account; (2) allow the SEC to withdraw the funds from that escrow account upon determination by the Receiver based on documentation that such funds belonged to a defendant depositor; (3) fully cooperate in taking all lawful steps to repatriate any additional money if the money in the escrow account is insufficient to satisfy all of the balances that all of the defendant-depositors have in Banc Caribe accounts. (*Id.* ¶ 19.)

According to an SEC accounting provided to Banc Caribe on November 27, 2002 as required by the Stipulation and Order, it has been calculated that the current amount owed by Banc Caribe is $4,896,916.06 plus accrued interest ("remaining account balance"). (*Id.* ¶ 23.) Banc Caribe has not objected to the accounting. (*Id.* ¶ 24.) Banc Caribe has not replied to the Receiver's request that the remaining account balance be repatriated and has not otherwise taken any steps to transfer the money to the Receiver. (*Id.* ¶ 26.)

In or about December 2002, Jones and Pollock sold the stock in Banc Caribe, including the beneficial interest of Homa, out of a trust domiciled in Dominica entitled the "Aristocrat Trust,"

which was controlled by Pollock, for $5 million. (*Id.* ¶ 27.) Upon information and belief, all of the funds from the sale went either directly to Pollock and/or Jones or to entities under the control of Pollock and/or Jones. Although Homa contributed at least half of the capital to form Banc Caribe and accordingly owned, at minimum, one half of the bank, none of the funds have been paid to the Receiver. (*Id.*)

On April 16, 2003, due to violations of Dominica's Offshore Banking Act of 1996, the High Court of Justice of the Commonwealth of Dominica ordered the process of compulsory liquidation of Banc Caribe to begin. (Receiver's Resp. Mot. Dismiss at 6; *see* Mot. Dismiss at 5.) The Court appointed Marcus Wide, a partner with PricewaterhouseCoopers, as Liquidator. (Receiver's Resp. Mot. Dismiss at 6.)

## DISCUSSION

### I. Motion to Dismiss of Banc Caribe's Liquidator

In support of the motion to dismiss, the Liquidator of Banc Caribe Ltd. argues that the Court: (1) lacks subject matter jurisdiction and (2) lacks personal jurisdiction over the Commonwealth of Dominica and the Liquidator of Banc Caribe under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1604. The Receiver argues that: (1) this Court properly asserted ancillary subject matter jurisdiction over the constructive trust in 1999; (2) Banc Caribe voluntarily consented to the personal jurisdiction of this Court; (3) the FSIA is inapplicable in this case; and (4) the fact that Banc Caribe entered into a judicially supervised liquidation process does not destroy this Court's subject matter jurisdiction over the matter or this Court's ability to render a judgment against the corporation being liquidated.

6

As a threshold matter, subject matter jurisdiction is proper with regard to the Receiver's motion for rule to show cause why Banc Caribe should not be held in contempt of court for violating the Freeze Order. There are at least two bases for so holding.

First, "Courts independently must be vested with power to impose . . . submission to their lawful mandates . . . ." *Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 831 (1994) (internal quotations omitted). Therefore, "[d]istrict courts do, and must, have the authority to punish contemptuous violations of their orders." *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995) (stating subject matter jurisdiction existed where shoe manufacturer sought to have foreign bank held in contempt for violating a temporary restraining order). This Court inherently has the power to exercise subject matter jurisdiction regarding the enforcement of the Freeze Order. If courts did not have such power, court orders would be toothless.

Second, 28 U.S.C. § 1367(a) provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." As the Seventh Circuit has held, "as long as an action commenced by a court-appointed receiver seeks to accomplish the ends sought and directed by the appointing court, jurisdiction over such an action is ancillary to the court's jurisdiction over the suit in which the receiver was appointed." *Tcherepnin v. Franz*, 485 F.2d 1251, 1256 (7th Cir. 1973). In this case, the conduct of Banc Caribe, Jones, and Pollock are so closely intertwined with the Ponzi scheme that the Court holds that their conduct constitutes the same case or controversy under Article III. The Receiver, in seeking to hold them in contempt of court for violating the Freeze Order, is clearly acting within the scope of his duty to marshal defendants' assets as directed by the Court.

7

The Court rejects the Liquidator's position that because Banc Caribe is subject to compulsory liquidation in the Commonwealth of Dominica, the Court lacks jurisdiction to hold Banc Caribe, Jones and Pollock in contempt of court for violating the Freeze Order. In so arguing, the Liquidator confuses the issue of the Court's jurisdiction to enter an order against respondents in this case with the issue whether the Receiver will ultimately be successful in obtaining assets from Banc Caribe in the Commonwealth of Dominica. The latter issue does not affect this Court's subject matter jurisdiction. The Liquidator's arguments also assume that the Receiver seeks all of Banc Caribe's assets, which, he argues, are tied up in the liquidation process. To the contrary, the record shows that the Receiver only seeks repayment of funds pursuant to the Stipulation and Order agreed to by Banc Caribe and funds from defendants' accounts or traceable to defendants' accounts. Moreover, the record shows that Banc Caribe has substantial assets held in domestic U.S. banks. (Tr. of Show Cause Hrg. of 7/903 at 6 (stating ninety-five percent of the damages the Receiver is seeking is from U.S. financial institutions and that the Receiver "may be able to yet execute on at least the bulk of the damages that the receivership has sustained").) Although the Liquidator asserts otherwise, an order of this Court regarding the funds that ought to be repaid to the escrow account will not be a "judicial nullity." (*See* Reply Mem. Supp. Mot. Dismiss (no pagination provided).)

Next, the Liquidator argues that the Court lacks personal jurisdiction over the Commonwealth of Dominica and the Liquidator. The Court addresses each separately.

As for the Commonwealth of Dominica, the Receiver does not seek a judgment regarding it, but rather seeks repayment of funds owned by Cash 4 Titles entities on behalf of the defrauded investors. Additionally, the issue whether personal jurisdiction exists as to the Commonwealth is not properly before the Court because: (1) no attorney has filed an appearance on behalf of the

8

Commonwealth; (2) the Liquidator, *i.e.*, Marcus Wide of PricewaterhouseCoopers, does not represent the Commonwealth; and (3) the Commonwealth has not moved to intervene in this case.

Movant's sole argument with regard to the Court's lack of personal jurisdiction as to the Liquidator is that he is entitled to immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1603(a). Pursuant to the FSIA, a "foreign state" includes an instrumentality of a foreign state. 28 U.S.C. § 1603(a). "A foreign instrumentality is defined by the FSIA as an entity which is a separate legal person, which is an organ of a foreign state or a majority of whose shares or other ownership interest is owned by a foreign state, and which is not a citizen of the United States." *Int'l Ins. Co. v. Caja Nacional De Ahorro y Seguro*, 293 F.3d 392, 397 (7th Cir. 2002) (citing 28 U.S.C. § 1603(b)). "The party claiming immunity under this section must establish a prima facie case that it is a foreign instrumentality." *Id.* If the party claiming immunity establishes this prima facie case, the burden shifts to opposing party to produce evidence establishing that the foreign state is not entitled to immunity." *Id.* However, the party claiming immunity bears the ultimate burden of establishing immunity. *Id.*

The Court holds that the Liquidator has failed to make out a *prima facie* case that he is a foreign instrumentality. His discussion of the issue fails to address whether he is a separate legal person, whether he is an organ of the foreign state, and whether he is a citizen of the United States. Accordingly, his claim of immunity must fail.

Moreover, the FSIA is applicable if the entity was a "foreign state" at the time of the acts giving rise to the action. *Gen. Elec. Capital Corp. v. Grossman*, 991 F.2d 1376, 1382 (8th Cir. 1993). The acts giving rise to the instant contempt issue arose prior to the liquidation of Banc Caribe. The transfer of Banc Caribe funds from PaineWebber to Alpha Credit Bank occurred on

October 18, 1999, the Stipulation and Order was executed on October 26, 1999, the failure to pay the remaining account balance began in November 27, 2002, and the sale of Banc Caribe's stock occurred in or about December 2002. However, the High Court of Justice of the Commonwealth of Dominica did not order the compulsory liquidation of Banc Caribe to begin until April 16, 2003. Thus, the FSIA is inapplicable in this case.

Having determined that the FSIA does not apply here, the Court asks whether asserting personal jurisdiction as to the Liquidator, who stands in the shoes of Banc Caribe, would "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A non-resident defendant may not be haled into court "solely as a result of random, fortuitous, or attenuated contacts" with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The defendant's contact with the forum state must be such that "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987).

The Receiver argues that when Banc Caribe entered into the Stipulation and Order and pledged to make payment to the Illinois receivership, it purposefully availed itself of conducting such activity in this forum and invoked the benefits and protections of its laws. However, the Liquidator argues that the Stipulation and Order provided "[i]t is neither the purpose or the intention of this stipulation and order that the jurisdiction of the courts of the United States in any way has been expanded beyond that which may have existed over Banc Caribe absent the filing of this stipulation and order." (Mot. Show Cause, Ex. N, Stipulation and Order ¶ 18.) Unfortunately, this language does not win the day for Banc Caribe or, in turn, the Liquidator. Although it acts to bar the Receiver

from asserting that personal jurisdiction exists with regard to Banc Caribe based on the mere filing of the Stipulation and Order, the agreement says nothing about whether Banc Caribe's conduct beyond the mere filing would be fair game to establish Banc Caribe had minimum contacts with this forum. The Receiver states, and the Liquidator does not dispute, that by entering an agreement with the Receiver and by pledging to pay certain funds to the Illinois receivership, Banc Caribe was able to unfreeze its accounts and continue doing business. It is also undisputed that Banc Caribe subsequently made two payments to the Illinois receivership on November 1, 1999 and April 16, 2002. The Court holds that through these acts, Banc Caribe has purposely availed itself of the privilege of conducting activities in this forum as well as triggered the protection of its laws.

Moreover, the interests of this forum and the Receiver in providing relief to the innocent investors cannot be understated. *See Asahi Metal Indus. Co.*, 480 U.S. at 113. Thus far, the burden on Banc Caribe has not been overbearing. Further, there is insufficient evidence that the Court's assertion of jurisdiction and ordering Banc Caribe to repay funds to the Illinois receiver from Banc Caribe's assets held primarily in U.S. banks effects the substantive policies of the Commonwealth of Dominica.

In sum, the Court holds that the Liquidator has failed to establish that this Court is want of subject matter jurisdiction and that it lacks personal jurisdiction. Accordingly, his motion is denied.

## II. Pollock and Jones' Motion to Vacate the Freeze Order

As an initial matter, based on the facts of this case, the Court holds that the entry of the freeze order with regard to Banc Caribe's assets was entirely necessary to remedy Banc Caribe's wrongdoing in furtherance of the Cash 4 Titles scheme.

11

In *SEC v. Hickey*, the Ninth Circuit held that an order freezing a third party brokerage's assets was necessary due to the defendant's unfettered control of the brokerage. 322 F.3d 1123, 1132 (9th Cir. 2003). Defendant's mother was the nominal owner of the brokerage and delegated operations to defendant, and defendant was the registered "administrative manager" and "designated broker" of the brokerage.

Similar to the facts in *Hickey*, in the instant case, Homa was Banc Caribe's Chairman of the Board of Directors, he owned 50% of Banc Caribe, and used Banc Caribe primarily as a tool in furtherance of his scheme to take money from innocent investors, move the funds offshore, and use the funds in part to pay interest on the notes and bonds of the earlier investors in Cash 4 Titles entities and to pay the personal expenses of Homa and Gause. Jones and Pollock did not even retain statements relating to Cash 4 Titles accounts after e-mailing account information to Homa. (Resp. Mot. Vacate Freeze Order, Ex. B, Kahlberg Aff. ¶ 17.) The Court sees no meaningful distinction between the level of control Hickey exercised in the brokerage and the degree of control Homa exercised over Banc Caribe's operation.

Pollock and Jones move to vacate the Freeze Order as void pursuant to Fed. R. Civ. P. 60(b)(4) because it was not properly entered under Dominican law, service was improper under Dominican law, and it would have put Banc Caribe in a position that conflicted with Dominican law. All of these arguments are irrelevant given the specific facts of this case. For all practical purposes, all of the monies that the Receiver seeks to recoup from Banc Caribe assets are located in U.S. banks and Pollock and Jones fail to argue or provide case law as to whether the laws of the Commonwealth of Dominica apply to such funds. Accordingly, Pollock and Jones' motion to vacate the freeze order is denied. Further, Pollock, Jones, and Banc Caribe need not be named in the freeze order. The

Order freezes the assets of the named defendants and prohibits the defendants as well as any of their agents, servants, employees and those acting in concert with them from transferring or selling any of the defendants' assets. If, as alleged, Pollock, Jones, and Banc Caribe had actual notice of the order and knowingly transferred, sold or aided others in the transfer or sale of defendant's assets, they may be found in contempt of the Court's Freeze Order whether or not they are named in the order.

### III. Receiver's Motion for Rule to Show Cause

In support of the motion for rule to show cause, the Receiver argues that Jones and Pollock aided and abetted Banc Caribe's violation of the Freeze Order and owe an accounting to the Receivership estate regarding Homa's share of the proceeds from the sale of Banc Caribe stock. Jones and Pollock argue that a rule to show cause should not issue because the Court lacks personal jurisdiction over them.

"Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum." *Waffenschmidt v. MacKay*, 763 F.2d 711, 714 (5th Cir. 1985); *see Stotler & Co. v. Able*, 870 F.2d 1158, 1164 (7th Cir. 1989); *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832 (2d Cir. 1930).

In this case, Jones and Pollock had actual notice of the Freeze Order. On or about October 17, 1999, Pollock spoke to Homa via telephone regarding the filing of the SEC Action. Then, on October 18, Jones received a copy of the Freeze Order by fax from Greg Gibbs of Dain Rauscher. On October 19, Pollock received a copy of a supplemental Freeze Order by fax from Greg Gibbs of

13

Dain Rauscher.

On October 18, after receiving notice of the Freeze Order and in direct violation of its terms, Jones, with the knowledge and authorization of Pollock, requested that PaineWebber transfer $1,975,000 from Banc Caribe's PaineWebber account to its account at the Alpha Credit Bank in Athens, Greece. On October 20, the funds were transferred.

In December 2002, for $5 million, Pollock and Jones sold all Banc Caribe stock, which included Homa's beneficial interest, out of a trust entitled the "Aristocrat Trust" that is a trust domiciled in Dominica and controlled by Pollock. Although Homa owned at least 50% of Banc Caribe, neither Pollock nor Jones has provided an accounting of the sales proceeds or paid the Receiver Homa's share of the proceeds.

Jones and Pollock, however, argue that such conduct is insufficient to provide this Court jurisdiction over them. The Court disagrees.

As venerable Judge Hand once stated:

> [N]o court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is *pro tanto brutum fulmen*, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court. Thus, <u>the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has power to forbid, an act of a party. This means that the respondent must either abet the defendant, or must be legally identified with him.</u>

*Alemite*, 42 F.2d at 832-33.

The case Pollock and Jones cite, *Canterbury Belts Ltd. v. Lane Walker Rudkin, Ltd.*, 869 F.2d 34, 40 (2d Cir. 1989), does not ultimately carry the day. In that case, the court stated that "a district

14

court cannot exercise personal jurisdiction over a nonparty to a litigation, on the basis that the nonparty is acting 'in active concert or participation,' within the meaning of Fed. R. Civ. P. 65(d), with a party who is subject to an injunction, unless personal jurisdiction is established over the nonparty." The Court agrees that merely acting in concert or participating with entities as contemplated by Fed. R. Civ. P. 65(d) is insufficient to confer jurisdiction. The Court is holding that Pollock and Jones' conduct is sufficient to confer jurisdiction because, as officers, they are legally indistinct from Banc Caribe and based on the facts of this case, their act is essentially the same as Banc Caribe's. *See United States v. Hochschild*, 977 F.2d 208, 211-12 (6th Cir. 1992) ("[I]t is a basic equity principle that 'whenever an injunction, whatever its nature may be, is directed to a corporation, it also runs against the corporation's officers,' in their corporate capacities.").

Based on the facts of this case, the Court finds there to be sufficient bases for an order to show cause. The Court therefore enters an Order requiring Pollock and Jones to show cause why: (1) they should not be ordered to pay the Receiver $1,975,000 for violating the Freeze Order and transferring those funds out of the PaineWebber account to a Banc Caribe account in Athens, Greece; and (2) they should not be required to pay the Receiver $2.5 million representing one half the sale proceeds from the sale of Banc Caribe.

## CONCLUSION

For the foregoing reasons, this Court: (1) denies Banc Caribe Ltd.'s motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction [doc. no. 1234-1]; (2) denies Pollock and Jones' motion to vacate the freeze order [1263-1]; and (3) grants the Receiver's motion for rule to show cause why Pollock and Jones: (1) should not be ordered to pay the Receiver $1,975,000 for violating the Freeze Order and transferring those funds out of the PaineWebber account to a Banc Caribe account in Athens, Greece; and (2) should not be required to pay the Receiver $2.5 million representing one half the sale proceeds from the sale of Banc Caribe [1193-1].

**SO ORDERED**  ENTERED: 3/31/04

HON. RONALD A. GUZMAN
**United States Judge**